```
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,      )
                                    )
 5                 Plaintiff,       )   Docket No. 08 CR 513
                                    )
 6            vs.                   )
                                    )
 7   LASHAWN LITTRICE,              )   Chicago, Illinois
                                    )   August 5, 2009
 8                 Defendant.       )   12:10 a.m.

 9

                   TRANSCRIPT OF PROCEEDINGS - Motion
10          BEFORE THE HONORABLE REBECCA R. PALLMEYER

11
     APPEARANCES:
12

13   For the Plaintiff:     HON. PATRICK J. FITZGERALD
                            UNITED STATES ATTORNEY
14                          BY:  MS. LELA JOHNSON
                                 MR. ROBERT J. MILAN
15                          219 South Dearborn, 5th Floor
                            Chicago, Illinois  60604
16

17   For the Defendant:     MR. WILLIAM P. MURPHY
                            407 South Dearborn, Suite 1675
18                          Chicago, Illinois  60605

19

20

21

22

23   Court Reporter:        FRANCES WARD, CSR, RPR, FCRR
                            Official Court Reporter
24                          219 S. Dearborn Street, Suite 2118
                            Chicago, Illinois  60604
25                          (312) 435-5561
                            frances_ward@ilnd.uscourts.gov
```

1       THE CLERK:  08 CR 513, United States versus LaShawn

2    Littrice for a pretrial conference.

3            MS. JOHNSON:  Good morning, your Honor.

4            Lela Johnson and Bob Milan on behalf of the United

5    States.

6            MR. MURPHY:  Good afternoon, your Honor.

7            William P. Murphy with my client, LaShawn Littrice.

8            THE DEFENDANT:  Good morning.

9            LaShirah El Bey.

10           MR. MURPHY:  LaShirah El Bey.  She has had her name

11    changed.

12           Judge, things are not going too well.  Mrs. El Bey

13    wishes to address the Court.

14           THE COURT:  Well, Ms. El Bey, let me remind you

15    that you are not required to make any statements.  And you

16    are not required to make any comments at all because the

17    government has the burden of proof.  And if the government

18    fails to meet the burden of proof, regardless of whether you

19    say anything, you will be acquitted.

20           Anything you do say can be used against you.  You

21    understand that, I am sure.  Is that right?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And you still wish to make a statement?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Proceed.

1      THE DEFENDANT:  Your Honor, for the record, when we

2    were here last, on July 20th, my attorney was not present.

3    You and I discussed some questions that I had.  And according

4    to the transcript, which I ordered a copy of, you said that

5    you would get back to me on the items that I requested that

6    were never given to me.

7      One of those items were the true bills.  I have a

8    copy of the indictment charge, but this is not a true bill.

9    I also --

10      THE COURT:  I am sorry, Ms. El Bey.  Maybe I

11    miscommunicated.

12      When I use the expression "true bill," I use that

13    as a synonym for indictment.  So I wouldn't have expected to

14    provide you with anything other than the indictment.

15      THE DEFENDANT:  Okay.  So is it possible that I can

16    get a copy of what a true bill looks like?  That's what I

17    asked on the last hearing.

18      THE COURT:  The only thing I can provide you in

19    that regard would be the indictment.  So if you don't have

20    the indictment, certainly you are entitled to that.

21      THE DEFENDANT:  I do have a copy of the indictment.

22      THE COURT:  There would be nothing else that we

23    would provide with respect to that.

24      THE DEFENDANT:  We also discussed the CUSIP number.

25      THE COURT:  Right.  And I told you then -- I will

1   have to repeat this -- I don't know what a CUSIP number is,

2   so I can't give you that.

3           THE DEFENDANT:  Okay.  I thought you said that you

4   would research it and get back to me.

5           THE COURT:  I don't know that that's what I said,

6   but I haven't looked at the transcript recently.  I don't

7   know what a CUSIP number is.

8           THE DEFENDANT:  Okay.

9           Well, I also asked you, who holds the claim against

10  me?  And for the record, by your own admission, you said

11  there was no claim against me.

12          THE COURT:  I think what I said was there is no

13  civil claim against you.  There are criminal charges.

14          THE DEFENDANT:  I have a copy of the transcript

15  here.

16          THE COURT:  All right.

17          THE DEFENDANT:  It was stated to me that there was

18  no claim against me.  You explained to me -- and I can read

19  it verbatim, if you would like.

20          THE COURT:  I will take your word for it.

21          THE DEFENDANT:  Basically, I was only asking about

22  the claim against me to find out who actually is alleging

23  what I did and where it's coming from.

24          And if there is no value to it, then how can we

25  possibly have a case?  That's why I asked that information.

1    And the prosecution has a burden to basically state

2    the claim for which the relief can be granted.

3    And because they cannot and it has not been told to

4    me up to this point -- I have made several requests -- their

5    failure to state a claim is a reason why the case should be

6    dismissed.

7    THE COURT:  The language you are using, "failure to

8    state a claim" for relief and for that reason the case should

9    be dismissed is all language that we think of in civil cases.

10    There is no claim against you in the sense that the

11    government is not asking, at this time, that you be found

12    liable for a civil claim.

13    They are -- they have charged you with crimes.  And

14    it's their burden at trial to prove that you are guilty

15    beyond a reasonable doubt.  That's the context that we are

16    in.  It isn't a 12(b)(6) motion where they need to state a

17    claim for relief.

18    THE DEFENDANT:  But in the beginning of the case,

19    you stated the charges against me and what the monetary value

20    were that was attached to those charges, along with the terms

21    of imprisonment.  And there was a monetary value, and you

22    said that that was per count.  That was the first day I came

23    to court.

24    THE COURT:  I think I might -- perhaps I was

25    discussing a fine or potential financial penalties that you

1    would face.

2          THE DEFENDANT:  Right.  So that's -- when I asked,

3    who holds the claim against me? I was asking what the actual

4    charges were that were being held against me.

5          THE COURT:  With respect to the charges, I can't

6    say anything beyond what shows up in the indictment.  Those

7    are the charges.

8          THE DEFENDANT:  Okay.  And that's part of my issue

9    because if I am saying that no one is telling me that they

10   have an actual claim against me, I need to know who the

11   injured party is.  There was no criminal intent.  There is no

12   malice.  So how are we still at a case?  That's what my

13   question is.

14          And part of me discussing this, which I am really

15   directing to the prosecution and not you, is, I am putting

16   myself on the record because we got an extension in May from

17   you to come back here to do trial on August 17th.  But since

18   then I have not -- nothing has been done on my case.  So I

19   was forced to go out and look for information to defend

20   myself.

21          My attorney was busy with other cases that consumed

22   his time.  So I am not saying it's no fault of his because

23   that's his caseload.  But I still have a burden to get a fair

24   trial.

25          So my issue is -- now is that the information that

1  I have requested, put on record, I have also put a bill of

2  particulars -- I asked for a bill of particulars.  I put that

3  on record.  I also gave an affidavit where I am tendering

4  bond for payment if they are saying that I have a charge

5  against me.  And no one has responded to anything.

6          And I can't talk directly to the prosecution, so

7  that's why I wait until I get to the court to deal with it

8  directly.  That's why I asked my attorney to let me speak

9  first, because he chose not to be here on July 20th, and that

10 was his own choice.

11         THE COURT:  I wasn't sure -- I think I commented on

12 this before.  I wasn't sure he had notice of that.

13         THE DEFENDANT:  He did.

14         MR. MURPHY:  I had notice, Judge.

15         THE COURT:  All right.  Ms. Johnson, any response

16 from the government?

17         MS. JOHNSON:  Your Honor, the government's response

18 is that this is a criminal case.  There is no claim as would

19 be in a civil case.

20         The indictment states the charges that are against

21 the defendant.  And it clearly states those charges.

22         I have no idea what a CUSIP number is.

23         The true bill is the indictment.  It has been

24 provided to her.

25         And the only monetary information the Court advised

1    the defendant of was, at the time, she was advised of the

2    maximum penalties.  The maximum penalty had a maximum of

3    $250,000 or twice the gross loss or twice the gain or loss.

4           So those are the only monetary values that are

5    associated.  But that is within the criminal context, not

6    within a claim context.

7           I have received certain documents from the

8    defendant directly, not through her attorney.  And those

9    documents are unintelligible in that they speak of bonds,

10   which are irrelevant in a criminal case.

11          THE COURT:  I think we should proceed with any

12   pretrial motions -- other pretrial motions that we have prior

13   to trial set to start on the 17th.

14          Mr. Murphy?

15          MR. MURPHY:  Judge, if I may?

16          I care a great deal about my client.  She is a

17   wonderful woman.  But I chose not to come on that last court

18   date because I didn't want to file those documents.

19          And Ms. Bey {sic} and I are quite at odds over so

20   many things.

21          For example, the true bill, I don't think she is

22   referring to what we all know as the true bill, meaning the

23   indictment where the last page says "true bill."

24          And I have actually looked up a CUSIP number.  I

25   kind of know it's some sort of number used at the Board of

1    Trade.

2          And the claim that she is talking about is based on

3    a bond that's taken out -- this is her beliefs -- that when

4    she was born, by the government, they take out a bond, and it

5    accumulates interest and everything like that so that the

6    government owes her a great deal of money that should take

7    the place of this indictment.

8          Don't look at me.  I have actually researched this,

9    Judge.

10          THE COURT:  It's a new one on me that the

11    government takes out a bond when you are born.  I know they

12    didn't do that in my case.

13          MR. MURPHY:  Again, I said my client and I have

14    come at loggerheads where we can't really communicate

15    anymore.

16          And don't take this wrong.  I care a great deal

17    about her, but we are just not on the same wavelength.  I

18    mean, I don't believe that this is a defense.

19          I mean, I was confused, but I actually have

20    researched this.  And I was supposed to have meetings with

21    the gentleman who was head of the Moorish temple, and through

22    circumstances beyond his control, he never came to the

23    various meetings we set up so that I could educate myself.

24          But the civil lawyer who was handling the case with

25    me -- he was helping -- he is a tax lawyer; she does have a

1  civil case -- apparently is not going to pursue helping me

2  anymore.  She goes to other lawyers.

3          Judge, I mean, I have never withdrawn from a case,

4  but I don't know how I can represent her.  I just -- I am

5  lost.

6          THE DEFENDANT:  Your Honor, may I speak?

7          THE COURT:  Sure.

8          THE DEFENDANT:  Mr. Murphy is a great lawyer.  I do

9  believe when we came here in the very beginning of the case

10 last year that everybody had all intentions to make sure that

11 I was represented adequately by fair representation, which is

12 why I retained him, and also that I would get a fair trial.

13         We came here in May and we asked for an extension

14 due to lack of evidence being given to us by the prosecution.

15 None of that has ever been given over to Mr. Murphy or

16 requested.  So when I met with him, I asked him, how are you

17 going to try a case on August 17th that we just met on a day

18 ago?

19         So I have a problem with the way everything has

20 been handled.  And I understand he has scheduling issues and

21 conflicts, but my case is just as important as anybody else's

22 case.  So that's why I took the time to research all the

23 information that I submitted, which, by the way, has nothing

24 to do with the defense that should have been prepared for me.

25 I reiterated that to Mr. Murphy several times.

1       The documents that I tendered to the Court were

2  government documents.  So they are not -- they're

3  not whatever the prosecution called them to think that they

4  are not valid.  But if everyone were to take time and

5  research those documents, they came from the government's Web

6  site.  It was information that I researched to find out there

7  is a value to my case.

8       It doesn't matter whether it's civil or criminal.

9       And I told you I could explain what a CUSIP number

10  was to anybody that needed to know.  And I could show how it

11  links to my case.  It has nothing to do with the Board of

12  Trade.

13       THE COURT:  Okay.  Just a couple of things.

14       Mr. Murphy has not at any point told me that he has

15  scheduling issues or conflicts that prevent him from

16  representing you.  He has never made that statement to me.

17  And he didn't make that statement just now.

18       With respect to information from the government, in

19  a criminal case you are entitled to certain information and

20  disclosures to be made by the government.  I have no reason

21  to believe that those disclosures weren't made in this case.

22  Mr. Murphy hasn't told me that they weren't, and Ms. Johnson

23  has never asked for more time in that regard.  I understood

24  she had made the disclosures required by a criminal

25  proceeding.  And again, Mr. Murphy hasn't told me otherwise.

1    THE DEFENDANT:  But there were things I requested

2  that Mr. Murphy never requested because he could never meet

3  with me.

4    I have only seen Mr. Murphy one time since we were

5  here in May.  That does not constitute preparation for a

6  trial.

7    THE COURT:  But if what you are looking for, for

8  example, is a CUSIP number and Mr. Murphy doesn't know what

9  that is or --

10    THE DEFENDANT:  I am not even --

11    THE COURT:  Could I finish?

12    THE DEFENDANT:  Sure.

13    THE COURT:  If what you are looking for is, for

14  example, a CUSIP number and Mr. Murphy either doesn't know

15  what it is or doesn't believe it's relevant to your case,

16  then he, as a responsible attorney, can't ask the government

17  for it, and he can't expect the government to produce it.

18    He has to focus on what he recognizes is germane to

19  a criminal case.  That's his responsibility.

20    THE DEFENDANT:  May I speak?

21    THE COURT:  Sure.

22    THE DEFENDANT:  The documents that I am requesting

23  are documents that were tampered with while they were in the

24  evidence -- in the custody of the prosecution.  Dick Manning,

25  which is the other attorney, and I, we were allowed to go

1   into the room where all my files were kept.  All the boxes

2   weren't there, and all the files were distorted.

3           I came back to Mr. Murphy, back in May, to inform

4   him that the documents that I needed to show proof or that

5   could help me in my case were not there.

6           Then he said he was going to make a request.

7           So it has nothing to do with the CUSIP number, any

8   of my sovereign documents or any of that.  All of that stuff

9   was just submitted to the Court the end of June, early July.

10          I am speaking of what happened in the past year.

11          So there are a lot of things that I have problems

12  with requesting, but for some reason, Mr. Murphy had no time

13  to request them.  They are documents that are pertaining

14  directly to the evidence that they said they have.

15          I was even given a subpoena.  The subpoena is

16  dated -- says that I have to submit documents from 2003 to

17  2006.  I can show the IRS inventory list that they gave me

18  when they came into the office.  It shows all my bank

19  statements, corporate records, and everything are in those

20  boxes.  And I saw them myself.  And I was also with Richard

21  Manning when I was in the office.

22          So it's nothing I can provide if it's already in

23  their possession.

24          But I am also saying, the tampering of evidence is

25  my boxes that are in there.  They have been in their office

1   since June of '05.  So they have had an opportunity to take
2   whatever they wanted to out of those files.
3          I still have completed files that go after the year
4   '06 in my office where I can prove what documents were
5   maintained in the file.  They are not there anymore.
6          THE COURT:  If some documents are missing or have
7   been tampered with or destroyed, that's something that you
8   can present at trial, and the jury will be permitted to draw
9   an inference that anything that they destroyed or tampered
10  with would have been favorable to you.
11         THE DEFENDANT:  Correct.
12         THE COURT:  So I don't think that's an impediment
13  to our proceeding.
14         THE DEFENDANT:  But there are other issues, I am
15  just saying, between a client and an attorney.  I had issues
16  and things that could have been requested.
17         We have a private investigator that's part of the
18  case.  All that information has to be thought out, set down,
19  and planned before we go to trial.  We just saw the private
20  investigator this morning.
21         THE COURT:  Are you asking that I appoint another
22  lawyer to represent you, or do you wish time to find another
23  lawyer to represent you?
24         Mr. Murphy has been your lawyer for months.
25         THE DEFENDANT:  Exactly.  He says he does not want

1  to represent me, and I don't think he has been representing

2  me the last couple of months anyway.  So it's like I lost

3  time.  We could have been going to trial now.

4          This is a huge burden on my family and my children.

5          THE COURT:  I do want to go to trial now.  I do

6  want to go to trial now.

7          THE DEFENDANT:  I mean, if I thought he even put

8  forth a little effort for it, we could be going to trial.

9  But if I have only seen Mr. Murphy one time, I am just

10  saying, how could we possibly be prepared for trial?

11          I just met him yesterday.  I saw him one time in

12  July, and that was at the discretion of Dick Manning, who

13  thought we were waiting too late to meet to put our

14  information together for trial.  That's not how you prepare

15  for trial.

16          MR. MURPHY:  There are things here that -- I don't

17  want to start getting into a "yes, that happened; no, it

18  didn't happen," a disagreement with Ms. Bey.  But I have

19  talked to her so many times in the last few months that I

20  can't sleep at night.

21          I mean, again, we are disagreeing to things, but I

22  believe the government can corroborate that I have talked to

23  them and --

24          THE DEFENDANT:  Maybe he was talking to them, but

25  he wasn't talking to me.  That's my problem.

1            THE COURT:  Ms. El Bey --

2            MR. MURPHY:  Sometimes that's true because I am

3    listening, but she is not listening to me.

4            THE DEFENDANT:  I have only spoken to you twice,

5    Bill.

6            THE COURT:  Ms. El Bey, I am uncertain of what we

7    are doing here.

8            I had this case scheduled for a final pretrial

9    conference.  I am expecting to pick a jury on the 17th of

10   August.  I have questionnaires and a letter prepared.  I am

11   prepared to go.

12           I know it's important to you that you get this

13   behind you.  If you are going to be acquitted, all the sooner

14   that happens is better for you.  I think it's important for

15   us to proceed.

16           What I am uncertain about now is whether you are

17   asking that Mr. Murphy be discharged from representing you;

18   and if so, what your proposal is with respect to your own

19   representation; and what your proposal is with respect to our

20   trial date, which has been set now for months, and which I

21   have carved out time for and I know the government attorneys

22   have as well.  We are ready to proceed on the 17th.

23           THE DEFENDANT:  With respect to everyone's

24   schedule, this is my life we are talking about.  So the only

25   thing I am asking the Court to take into consideration is, I

1  deserve to have an adequate representation by an attorney

2  that's going to take the time to plan for trial.  I don't

3  believe you plan for trial a week before trial.

4          And I am not an attorney, and I am not asking or

5  telling everybody that I am.  But I am asking that I be given

6  fair opportunity to request the documents that Bill said he

7  was going to request that were never requested and the things

8  that didn't get communicated effectively between the two of

9  us.

10          THE COURT:  You need to tell me what it is that you

11  need that you believe should be requested that hasn't been

12  requested.  And let me tell you why I am saying that.

13          Mr. Murphy is an experienced criminal defense

14  attorney.  This is not his first case.  It's not his fifth

15  case.  It's not his tenth case.  He has been in the court

16  many, many times.  I know he knows the rules.

17          I know that Mr. Milan and Ms. Johnson know the

18  rules.

19          I know that if they haven't complied with the

20  rules, either side, the other side will come tell me.  I know

21  that's how it works.  I have every reason to believe that

22  these lawyers know what they are doing.  I have never seen

23  any indication on the part of any of these lawyers that they

24  don't.

25          So I haven't heard from Mr. Murphy in this case

1    that Ms. Johnson has withheld anything she is supposed to

2    produce or that Mr. Milan has withheld anything he is

3    supposed to produce.

4         You are telling me that there are materials you

5    need and things that you need to have.  I need to know

6    specifically what they are.

7         I also need to know once again, are you asking that

8    I discharge Mr. Murphy?  Are you asking for another lawyer?

9    And what is your proposal regarding our trial date?

10        THE DEFENDANT:  I am asking that the trial date be

11   moved.

12        Mr. Murphy told me on yesterday that he did not

13   want to represent me in this case.  So he was going to speak

14   on his own regarding that matter.

15        I am asking that I be entitled to adequate

16   representation and that the documents and the CDs, all the

17   tapes that I have asked for that he said he was going to

18   request, I am asking that they be given.  I have a list of

19   things.

20        THE COURT:  I would like to see the list.

21        THE DEFENDANT:  Mr. Murphy wouldn't let me read the

22   list yesterday because he said he wanted to withdraw from the

23   case, so we got nowhere.

24        THE COURT:  I have no reason to believe that you

25   are not getting adequate representation from the lawyer who

1    now represents you.  I have no indication in this record that

2    Mr. Murphy is not providing an adequate representation.

3    None.

4               What I am hearing from you is that there were

5    certain documents you wanted him to request that he hasn't

6    requested.  That's the only indication I am hearing that he

7    has not provided an adequate representation.

8               THE DEFENDANT:  That's not the only thing I am

9    saying, your Honor.

10              THE COURT:  Why don't we begin there.

11              What are the documents that you feel you are

12   entitled to that have not --

13              THE DEFENDANT:  I have --

14              THE COURT:  Could I finish?

15              THE DEFENDANT:  Sure.

16              THE COURT:  -- that have not been requested or

17   produced?

18              THE DEFENDANT:  There are documents pertaining to

19   each witness that should have been in the files that they

20   said they made available to us.

21              THE COURT:  Can you tell me what those documents

22   are?

23              THE DEFENDANT:  Disclaimer forms, 8453s, signature

24   documents.

25              THE COURT:  Tell me what you mean by a signature

1   document.

2         THE DEFENDANT:  Signature documents, where clients,

3   before they allow us to transmit their file, give us

4   permission to electronically file it by signing under

5   penalties of perjury.

6         THE COURT:  Would these be materials that you would

7   have in your files?

8         THE DEFENDANT:  Yes.

9         THE COURT:  But you no longer have them in your

10  files.

11        THE DEFENDANT:  Well, the files are with the IRS.

12        THE COURT:  And you don't have any copies of your

13  own; is that right?

14        THE DEFENDANT:  They took everything.

15        THE COURT:  So you need signature documents.

16  That's one thing.

17        8453s.  Let's talk about that.

18        Tell me what an 8453 is.

19        THE DEFENDANT:  That's an Internal Revenue Service

20  document that allows the taxpayer to authorize the electronic

21  file provider to submit documents in.  That was another

22  document.

23        The first document is called a disclaimer.  That's

24  made by my office, Diamond Accounting.

25        THE COURT:  Okay.  And these would all be items

1    that would be in the files that you prepared for your

2    clients.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Is that right?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Okay.  And those were documents that

7    were seized when your files were seized by the government?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And you need copies of them in order to

10   prepare for your defense?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Okay.  That's a fair request.

13             Are there other documents that you need?

14             THE DEFENDANT:  I asked for a clean copy of the

15   undercover versions disk.

16             We were given an undercover -- a CD, but it was

17   inaudible.  So the IRS had a clean copy, and a clean copy was

18   never provided to us.

19             THE COURT:  So you need an audible copy of the

20   surveillance tapes; is that right?

21             THE DEFENDANT:  No, no.  It wasn't surveillance.

22   It was audio.  It was an undercover agent that was wired.

23             THE COURT:  An audiotape can be a surveillance

24   tape.  Are you talking about a tape made between an agent and

25   you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  So you want an audible copy

3   of the recording; is that right?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  What else do you need?

6          THE DEFENDANT:  I would like for -- this is not

7   from the prosecution, but I would like for the private

8   investigator's observations to be given to the attorney as

9   well.

10          THE COURT:  Which private investigator are we

11   talking about?

12          THE DEFENDANT:  His name is Mr. Hodges.  He is here

13   today.

14          THE COURT:  Is he a government agent?

15          THE DEFENDANT:  No.

16          MR. MURPHY:  He is not.

17          THE DEFENDANT:  No.  He worked for us.

18          THE COURT:  And what is it that you believe he has

19   that you would like?

20          THE DEFENDANT:  Interviews.

21          THE COURT:  By that you mean notes of interviews,

22   transcripts of interviews?

23          THE DEFENDANT:  Interviews of some of the witnesses

24   and people who could attest to the issues that are being

25   alleged.

1          THE COURT:  I am not trying to be difficult.  When

2     you say that you need interviews, an interview is, in my

3     mind, an oral conversation between people.

4          So are you talking about something in writing now?

5     And tell me, if so, what is that?

6          THE DEFENDANT:  Yes.  He has made notes.  He went

7     out to interview witnesses.  He has made notes, but we have

8     not all come together.

9          THE COURT:  Okay.  So notes from the investigator's

10    interviews.

11         THE DEFENDANT:  Yes.

12         THE COURT:  Anything else?

13         THE DEFENDANT:  There was, I believe, an expert

14    testimony, or so-called expert testimony.  I would need the

15    information that the expert witness gave in order to derive

16    to the figure, which was supposed to be 12 million.  Now it's

17    $140,000.

18         THE COURT:  All right.  And which expert are we

19    talking about here?

20         THE DEFENDANT:  I am not sure who he is, but it was

21    given to Bill on the last court date.

22         THE COURT:  When you say, "it was given," that's a

23    passive construction, and I don't know who it was that gave

24    it to him.

25         THE DEFENDANT:  The prosecution gave Bill a copy of

1     the expert testimony.

2            THE COURT:  All right.  An expert report.

3            THE DEFENDANT:  Yes.

4            THE COURT:  Anything else?

5            THE DEFENDANT:  Yes.  Access to the files that were

6     taken from the office so that we can inventory the boxes

7     ourselves versus the list that was created by Ms. Acevedo.

8            Your Honor, I also have a document that I submitted

9     to the Court on the record.  It is a demand for a bill of

10    particulars.  And if I can give it to my attorney, he can

11    give it to the prosecution, but it was already recorded on my

12    case.

13           THE COURT:  Requests for bills of particulars are

14    rarely granted because the detail in the indictment should be

15    sufficient.  And in this case, where the details in the bill

16    of indictment are amplified by discovery responses,

17    ordinarily that's all that's necessary.

18           But I think we should talk about these three

19    categories -- or several categories of documents that you

20    have identified.

21           Let me ask whether the government can provide us

22    with these disclaimer documents, 8453 IRS forms, and the

23    signature documents that would be maintained in -- as I

24    understand it, in Ms. Littrice's client files?

25           MS. JOHNSON:  Your Honor, with regard to the

1   8453 documents, they have been -- to the degree that we have

2   them, they have been provided and disclosed.

3          As for signature documents, it's been explained to

4   me that prior to the 8453, there was something called -- or

5   something she may be referring to as a signature document,

6   which is similar to an 8453, which a client signs authorizing

7   the electronic filing of their document.

8          There is also an 88-something-or-other that's a

9   similar type of document.

10         All the documents that we have with regard to the

11  witnesses and the possible witnesses and even people who we

12  have not chosen to use as witnesses have been disclosed.  We

13  have made copies of them.  Based on the defendant's request,

14  we went back to make sure we had gotten all of them.  We

15  determined that we had not.  And then we pulled the

16  additional ones, made copies, and provided those to

17  Mr. Murphy.

18         I will stop there for your next question.

19         THE COURT:  Okay.  That accounts for disclaimer,

20  8453, and signature documents.

21         MS. JOHNSON:  I am sorry.  As for disclaimer, your

22  Honor.

23         THE COURT:  Yes.

24         MS. JOHNSON:  There were no disclaimer documents

25  found in any of the records that we have copies of.

1        And also to clarify, as the defendant has stated,

2   the search was done in 2005.  There are documents that could

3   exist between 2005 and 2006 which the IRS does not have

4   because they did not go back and seize any additional

5   documents.  So if such documents exist for the year -- that

6   were prepared between 2005 and 2006, the defendant would have

7   them.  We would not.

8        THE COURT:  Okay.  And you don't have any from

9   prior to '06?

10        MS. JOHNSON:  No, your Honor, we do not.  We have

11   looked for such documents.  We have not identified such

12   documents.  We have spoken to certain witnesses -- not all

13   the witnesses -- about them.  And they do not recall ever

14   signing any such documents.

15        THE DEFENDANT:  Your Honor, Mr. Murphy has some

16   files in possession that was given to him by the prosecution,

17   and they have these disclaimers in some of them.  So the

18   documents actually exist.

19        And they were given to him by you-all.

20        This is what the document looks like, if she would

21   like to take a look at it (indicating).  Bill has those

22   copies in his files.  They were provided by the prosecution.

23        But they are in there, and they are signed.  They

24   are just not there for every one.  They are only every other

25   file.

1    THE COURT:  I think what Ms. Johnson is saying is

2    that she has produced every one they have.

3    THE DEFENDANT:  She said that she's never heard of

4    a disclaimer and she has asked people.

5    And I am just saying that -- I am making my comment

6    to say that these files have been given to Bill, and there

7    are signed copies in some of the witnesses' files.

8    THE COURT:  Let's talk about the expert report.

9    Has a copy of the expert report been prepared?

10    MS. JOHNSON:  Your Honor, if you will recall, at

11    our last pretrial conference, the government did an expert

12    disclosure statement as a precautionary measure.  The

13    individual who will be testifying is basically a summary

14    witness who will be testifying as to the effect of the

15    alleged missing information or misinformation that's on the

16    tax returns and how that would change the tax liability of

17    the particular taxpayer.

18    The Court -- we discussed this in court, and it was

19    determined that it's not actually an expert.  But we have

20    provided, I believe, draft copies of the calculations.  If we

21    have not, we can provide those draft copies today.

22    THE COURT:  All right.  So that's regarding the

23    testimony that will be given by your summary witness.

24    MS. JOHNSON:  Yes.  It's more of a summary witness,

25    but we did a disclosure in an abundance of caution, just in

1    case the Court would see them as something other than a

2    summary witness.  And I don't believe there was any objection

3    to him being a summary witness.

4            THE COURT:  All right.  I think the last item on my

5    list here is, you know, the inaudible version of the

6    recording.

7            I wonder if we could ask for another copy of the

8    recording to be produced to Ms. Littrice?

9            MS. JOHNSON:  I will certainly provide another copy

10   of the recording.  We have also provided a draft transcripts

11   of the recordings.

12           THE COURT:  All right.

13           THE DEFENDANT:  Your Honor, may I speak?

14           THE COURT:  Sure.

15           THE DEFENDANT:  The other items that I was

16   requesting -- I had to find my list.

17           There is an initial verified complaint that was

18   done to initiate the case.

19           THE COURT:  Okay.

20           THE DEFENDANT:  I have never been provided with a

21   copy of that, and I would like a copy for the record.

22           THE COURT:  You are entitled to that.

23           THE DEFENDANT:  And I also am requesting, for the

24   record, a copy of the original signed search warrant.

25           And I am also requesting a copy of the full

1  disclosure and the nature of the case for the proceedings.

2         These items I have never received.

3         MS. JOHNSON:  May I start -- I can start with what

4  she asked for.

5         THE COURT:  Sure.

6         MS. JOHNSON:  The initial verified complaint.

7  Number one, a verified complaint is a civil document.  There

8  is no initial verified complaint in this cases.  This case

9  was brought by indictment.  There was no complaint.

10        THE COURT:  There was no preceding criminal

11 complaint?

12        MS. JOHNSON:  No, your Honor.

13        THE COURT:  It doesn't always happen.  Some cases

14 are initiated by way of an indictment.  And Ms. Johnson is

15 telling me that's what happened in this case.  There wasn't a

16 complaint.

17        MS. JOHNSON:  Your Honor, there may be some

18 confusion because there is another case pending against the

19 defendant, which is a civil case, which is not what's before

20 this Court.

21        THE COURT:  What about -- the other item that

22 Ms. Littrice mentioned is a signed company of the search

23 warrant.

24        MS. JOHNSON:  She has a copy of the search warrant.

25 There was one given to her at the time of the search.  We

1 produced a copy of the search warrant as part of our

2 disclosure.  And if she needs another copy, we can provide

3 her with another copy.

4          THE COURT:  Okay.

5          THE DEFENDANT:  I was asking for the original

6 signed search warrant.  I do have a copy of the search

7 warrant, but the date of execution is blank.

8          THE COURT:  All right.

9          I will direct that the government provide you with

10 a copy of a dated and signed warrant.

11          THE DEFENDANT:  Your Honor, back to the verified

12 complaint that doesn't exist, when the case was brought for

13 indictment, if it doesn't have a verified complaint

14 initially, what actually constitutes the indictment to go

15 forth?

16          THE COURT:  I don't understand the question.

17          THE DEFENDANT:  When I was asking for the initial

18 verified complaint, she said an indictment was done and

19 that's where the charge actually came from.

20          I just want to know what -- something had to

21 initiate the case.  What --

22          THE COURT:  I understand the question.

23          In a criminal case, it can be initiated one of two

24 ways.  There can be a criminal complaint.  And if that

25 happens, the government is required to follow up with an

1    indictment, ordinarily within 30 days.  Sometimes they get

2    extensions of time, but that's pretty standard.

3         But there are other cases, a number of other cases,

4    many I have had, where no criminal complaint is ever

5    initiated because the case begins with an indictment.

6         So what Ms. Johnson is telling me is, this is one

7    of those cases.  They never issued a sworn criminal

8    complaint.  They started in this case, the prosecution, by

9    going to the grand jury and getting an indictment.

10        So the indictment -- which we, by the way,

11   sometimes call a true bill.  We don't make -- at least I

12   don't make a distinction between those two documents.  I

13   don't know if there is one.

14        My understanding is that the indictment is the

15   instrument that initiates a criminal proceeding.  In fact, in

16   a felony case, an indictment is required.  If you don't get

17   an indictment in a felony case --

18             THE DEFENDANT:  So what initiates the indictment?

19        We were served with papers for the search warrant

20   in June of 2005, and the indictment was in July of '08.  So I

21   am really trying to get to the root of who actually filed the

22   initial complaint.

23             THE COURT:  You can issue a search warrant without

24   a complaint.  Maybe that's what happened in this case.  I

25   don't know.

1    THE DEFENDANT:  But wouldn't there have to be a

2  reason, probable cause, to have a search warrant?

3    THE COURT:  Sure.

4    THE DEFENDANT:  So what document would be done --

5  or what would be done to justify that search warrant?

6    THE COURT:  That could be an affidavit.

7    THE DEFENDANT:  By whom?  One of my clients?

8    THE COURT:  I don't know.

9    THE DEFENDANT:  That's my question I'm asking.

10    THE COURT:  So you would like the affidavit given

11  in support of the search warrant?

12    THE DEFENDANT:  Yes, to start the case initially.

13    THE COURT:  All right.

14    Mr. Murphy?

15    MR. MURPHY:  I think what -- we are taking a guess

16  that it started during somebody's audit, and they said

17  something that eventually led to the IRS obtaining a search

18  warrant.  I think that's what Ms. Bey means.

19    Right?

20    THE DEFENDANT:  Yes.

21    MR. MURPHY:  Or we don't know that there was an

22  audit.

23    THE DEFENDANT:  Right.  We don't know.

24    MR. MURPHY:  But whatever -- whether it was an

25  anonymous tip or a complaint against someone else --

1      THE DEFENDANT:  That's what I am asking.  That's

2   actually what I am asking.

3      And also my other question, which could piggyback

4   on that question, is, regarding the grand jury that brought

5   forth the indictment, there were documents that were

6   requested: my bank statements, my mortgage documents, and

7   from the Household Bank provider of our e-filing services.

8      All those documents were requested for the special

9   grand jury back in May.  And we were told they were going to

10   be made available, and that's how the indictment was brought

11   forth.

12      I have never seen any of them.  The only thing I

13   received are letters from those particular entities stating

14   that they would be attending a special grand jury and they

15   had to tender over my documents: bank statements; mortgage

16   documents; and the information from the service provider,

17   Household Bank.

18      So I got letters from all banks that I deal with.

19   And I also got letters from my mortgage company.  At that

20   time, I had just closed.  So those documents were supposed to

21   be given to me as to how the case came about after the

22   special grand jury.  I never received any of that.  That was

23   one of the documents I was requesting a while ago.

24      THE COURT:  Okay.  I am still not quite sure I

25   understand this.

1     Documents that were issued or generated by the

2     grand jury or presented to the grand jury?

3     THE DEFENDANT:  It was presented to the grand jury.

4     I received letters from LaSalle Bank, Chase Bank, anybody

5     that I have dealt with.  And I called those people, because

6     they were saying they had to give my bank statements over to

7     these entities.

8     This is before I knew that the case actually

9     existed.

10    So I called the legal department at the bank, and

11    they said by law they had to notify me that they would be

12    attending a special grand jury hearing.  And then that's when

13    I then talked to my attorney and he took it from there.

14    But we have never been given any documents that

15    were tendered at that special grand jury to start the

16    indictment.

17    THE COURT:  Response?

18    MS. JOHNSON:  Your Honor, a copy of the HSBC

19    documents, I believe, were provided specifically to the

20    defendant.  And the remainder of those documents have been

21    available for review, pursuant to the government's disclosure

22    letter, at any point in time that the defendant wanted to

23    review them, as we have made other documents per her request

24    available to her for review, including all the search

25    documents on two separate -- on one occasion officer's

1   documents and on a separate occasion documents relating

2   particularly to certain witnesses.

3           We also will happily make the other documents

4   available to her.

5           But the HSBC records were definitely produced to

6   her.

7           And I am trying to determine whether or not the

8   other documents she is referring to are available to her.

9   But if they are not, we can make them available.  They have

10  always been available for her review.

11          As the Court would understand, the number of

12  documents that have been requested and maintained in this

13  particular case are voluminous, so we have not copied each

14  and every single document.

15          THE COURT:  In any case, it sounds as though the

16  government doesn't have any objection to producing, again for

17  the review, HSBC records, the documents that relate to the

18  search, and the documents seized from Ms. Littrice's office.

19          MS. JOHNSON:  Your Honor, actually, Fremont

20  Investment records were made available -- were produced to

21  the defendant, LaSalle Bank records, Pullman Bank records.

22  All three of those types of records were actually produced.

23          THE DEFENDANT:  We never saw them.

24          THE COURT:  Who's "we"?

25          THE DEFENDANT:  Myself and Mr. Murphy.

1       We have never seen any of the mortgage documents,

2   the bank documents.  The only thing that was in the file was

3   the HSBC documents.  That was in the file.

4       THE COURT:  Okay.  It sounds like they are

5   available for your review right now.

6       MS. JOHNSON:  Your Honor, we even have a list of

7   the documents that we have copied and produced, but we can

8   reproduce them.

9       THE COURT:  Does the list that you are looking at

10  right now include a reference to these bank documents?

11      MS. JOHNSON:  That is our internal list.  Yes, your

12  Honor.  Each time we did a disclosure, we gave a list of what

13  was being disclosed.  So I can check my disclosure as well.

14      In either case, we can make sure they are

15  available, but I can confirm that they were disclosed

16  previously.

17      THE COURT:  Mr. Murphy, is it your position that

18  the government has withheld any relevant bank records?

19      MR. MURPHY:  Judge, I can say without any doubt

20  that Ms. Johnson has been responsive to all my requests.  I

21  have got organized files.

22      I know that the files in the IRS were kept in a

23  disarray in 41 different boxes that Dick Manning and LaShawn

24  went over.  There were things that were there.

25      And we did receive a subpoena not too long ago for

1  records that my client now has indicated that were in the

2  boxes.  And I let Ms. Johnson know that.

3              And we also let her know, as far as the subpoena

4  relating to business records from '06, that we weren't going

5  to produce it without a court order.

6              I also have in my possession a bill of particular.

7  It's got my name on it as the attorney.  And this is one of

8  the problems I have had with Ms. Littrice -- or Ms. Bey.  I

9  am sorry.

10             THE COURT:  Ms. El Bey.

11             MR. MURPHY:  El Bey.

12             Again, I said I would research this.  And I was on

13  an executive committee meeting on this at a prior time.  And

14  based on that executive committee meeting, I can't put my

15  name on a document like this.  I would only do so if I was

16  ordered, but I don't think your Honor will order me.

17             THE DEFENDANT:  I didn't submit that document as if

18  he did.  That's why my name is on the top.

19             But you are my attorney, though, so I don't have it

20  like you submitted it.

21             As a matter of fact, when I entered into it, I told

22  him that I was entering it on my own, so that's how it's

23  recorded.  So it's not misrepresenting Mr. Murphy at all.  He

24  is still my attorney on record as of now.

25             THE COURT:  Yes, he is your attorney of record.

1       When an individual in a criminal case is

2   represented by counsel, ordinarily they are not permitted to

3   file *pro se* pleadings.

4       If an individual who's represented by counsel does

5   submit a *pro se* pleading, I think it's important to leave the

6   lawyer's name out of it because the lawyer can only sign or

7   submit a document if he or she is prepared to stand by that

8   document.

9       Mr. Murphy is indicating that he is not endorsing

10  or signing off on this document.  He is not submitting it to

11  the Court, so his name shouldn't be on it.

12      THE DEFENDANT:  I signed it.  I was just showing

13  him that I never misrepresented his signature.

14      The line just said "Enter attorney's name."  He was

15  my attorney.  So I wasn't trying to misrepresent the

16  document.

17      And it was a document that he would not have

18  submitted on my behalf.  So I submitted it myself.

19      MS. JOHNSON:  Your Honor, I am sorry.  I do have

20  the answer.

21      I believe on July 10th a discovery disk was sent

22  that contained the Fremont Investment records, LaSalle Bank

23  records, Pullman Bank, and certain audit files and additional

24  memorandums of interview.

25      THE DEFENDANT:  Did you get that?  I never heard of

1    it.

2            MR. MURPHY:  I did receive a disk.  I made copies

3    of all disks that I have given to Ms. El Bey, but I believe

4    it totaled like six or seven.

5            THE DEFENDANT:  Right.  But not that disk.  You

6    just got that in July.  We just met in mid-July, so I didn't

7    get another disk from you.

8            THE COURT:  I still need to know exactly what

9    request is being made.

10            Are you requesting -- I am asking now again.  Are

11    you asking that Mr. Murphy be excused from representing you?

12            And if so, will you be finding substitute counsel

13    to represent you?

14            THE DEFENDANT:  I am requesting that if Mr. Murphy

15    does not want to represent me, that he say so.  I am not

16    asking him not to be a part of the case.  But if that is his

17    wish, he needs to let the Court know.

18            And I am also asking that the trial date be moved

19    because, even if Mr. Murphy were to represent me, he is not

20    prepared.

21            THE COURT:  I have never heard from Mr. Murphy that

22    he is not prepared.

23            THE DEFENDANT:  Exactly.  And that's what I am

24    saying.  At some point attorneys have to be accountable for

25    their time and their caseload as well.

1        THE COURT:  What I am saying is, he hasn't told me

2    that he is not prepared to proceed.

3        THE DEFENDANT:  Right.  And this is the first time

4    you have seen him since we came in May.

5        THE COURT:  I don't --

6        THE DEFENDANT:  So he's got to speak.  He's got to

7    speak.  I'm just saying I can't talk for him.

8        The only thing I am doing is basically saying what

9    I know.  I am the actual client in the case.  I have not

10   gotten a chance to confer with my attorney but once.  And we

11   were not preparing for trial.

12       THE COURT:  Okay.  Is the problem that you really

13   have not had enough time to meet with Mr. Murphy?  Is that

14   the problem?

15       THE DEFENDANT:  I guess it's according to his

16   schedule.  But he said yesterday he didn't want to represent

17   me anymore.

18       THE COURT:  From your perspective -- I am going to

19   put him out of it for a moment.

20       From your perspective, the problem is that you

21   haven't had a chance -- a sufficient chance to consult with

22   him about your defense in this case?

23       THE DEFENDANT:  Correct.

24       THE COURT:  All right.

25       Well, we still have a week and a half between now

1 │ and when the trial is set to begin.  It seems to me -- and I

2 │ am hearing from Ms. Johnson that she is prepared, and has

3 │ already done so, to provide all the documents that you are

4 │ looking for, to the extent they are in the government's

5 │ hands.

6 │         Perhaps it would make sense for us to recess, give

7 │ you a chance to meet with Mr. Murphy, and see whether you can

8 │ develop a plan for a defense in this case.

9 │         It might be Mr. Murphy's ideas about the defense

10 │ and yours are somewhat different.

11 │         But to the extent that you are looking for

12 │ documents and the like, you are entitled to those documents.

13 │ I want to make sure that you get them.  I can't make the

14 │ government produce documents that don't exist, obviously.

15 │ But certainly if there are documents that are in their

16 │ possession that you haven't, for whatever reason, gotten a

17 │ chance to see, you are entitled to that.

18 │         So if your concern is that you feel Mr. Murphy

19 │ hasn't had time and you want a chance to make sure that he

20 │ has had that time, that he has got the documents he needs,

21 │ why don't we take some time right now and make sure that that

22 │ happens.

23 │         THE DEFENDANT:  But also no one ever responded to

24 │ the request for the full disclosure of the case.

25 │         THE COURT:  Which full disclosure?

1    THE DEFENDANT:  When you were asking me the items,

2    I said I need full disclosure of the nature of the case for

3    the proceedings.  It's information that I would like to

4    review.

5    If things were made available to my attorney, then

6    I should be able to review those documents as well.

7    Then, in response to the date, August 17th is two

8    weeks away.  I have a family vacation planned for Saturday,

9    August 8th, in which Mr. Murphy was well aware of, and he

10    says that he forgot.  August 8th to August 15th.  I planned

11    this months ago.  We had a trial date of May 26th.

12    So it was a trip that was basically paid for by my

13    family back in February or March, when we thought we were

14    going to a May trial.  So I couldn't undo anything.  So now

15    that's an issue for the time.

16    This just happened to fall on the August 5th date

17    when you-all rescheduled it back in May.

18    MS. JOHNSON:  Your Honor, with regard to the trial

19    date, at the time the trial was rescheduled, the defendant

20    was present.  So she has always been aware of the August 17th

21    trial date.

22    THE DEFENDANT:  But the date was already set for

23    the trip, and I have documents to prove that.  It was done in

24    March.

25    THE COURT:  But you didn't mention that to me.  And

1  I believe --

2      THE DEFENDANT:  Well, I mentioned it to Mr. Murphy.

3      THE COURT:  Could I finish?

4      THE DEFENDANT:  Sure.

5      THE COURT:  I believe that, because you are on

6  pretrial release, you need authorization from the Court to

7  leave the city anyway.  And if that's a reason that you are

8  not going to be prepared to go to trial, I will be denying

9  leave for you to leave the jurisdiction.

10      Let me just make a few more points.

11      With respect to the request for a full disclosure

12  of some kind, that request, the fact that you need some full

13  disclosure, would not be a basis upon which I can move the

14  trial date because I have yet to hear that any full

15  disclosure hasn't been made.

16      The document that initiates this case was the

17  indictment.  That's been available to you all along.  There

18  is no criminal complaint.  We have heard that.  I don't

19  understand that anything has been withheld.

20      If there is some full disclosure that you think

21  isn't there, it's simply not there.  What that means is that

22  you will be able to argue to the jury that they haven't made

23  full disclosure, material hasn't been produced, that they

24  have withheld materials.  And to the extent they have been

25  withheld, that the jury should draw a conclusion those

1    documents would be favorable to you.  You are in a position

2    to make all those arguments.

3           But I can't require them to produce documents that

4    don't exist.

5           And the fact that they haven't produced such

6    documents is not a reason for me to move the trial date.

7           Your personal vacation, respectfully, is not a

8    reason for me to move this trial date, which was set months

9    ago while you were here; and as to which, I would have to

10   give you leave to leave the jurisdiction anyway.

11          The government has been prepared for months for

12   this.  I have been prepared for months.  We have set aside

13   time.  Other people who would like to have tried their cases

14   next week were told no -- not next week, but a week and a

15   half from now were told no by me because of your trial.  And

16   I think it's appropriate for us to proceed.

17          Now, my question again is whether you are asking

18   that I appoint another lawyer.  And your answer to that has

19   been that you think Mr. Murphy should speak to that.

20          To the extent that you believe he is not prepared

21   or needs more time, why don't we find out whether he could

22   take the time right now to meet with you and make sure that

23   he is prepared to proceed to trial in a week and a half?

24          THE DEFENDANT:  But, your Honor, with respect, I

25   was never introducing my vacation to say that that was a

1  reason for more time.  The vacation was planned months ago,

2  before we had an extension trial.  And the person that booked

3  the trip did not know anything about the trial date changing.

4  So that was not done intentionally.  This is something that

5  we do every year with our children.  So it has nothing to do

6  with the case.  I had them push the date back because we had

7  a May 26th trial date.

8           So if you review the documents -- Mr. Murphy does

9  have a copy of them.  And he was aware the last time we was

10  here because I had them then.  He just said it was not a good

11  time to bring it up.

12          THE COURT:  Ms. Littrice, I am not moving the trial

13  date for your vacation.

14          THE DEFENDANT:  No, no.  I don't want it moved

15  because of the vacation.  I want it moved because my attorney

16  has not conferred with me, and he is not prepared.

17          THE COURT:  Why don't we give him a chance to

18  confer with you now?

19          THE DEFENDANT:  Sure.

20          THE COURT:  Why don't we recess until 4 o'clock.  I

21  will see you then.

22          MR. MURPHY:  Judge, I am prepared to address it

23  right now.

24          THE COURT:  Excuse me?

25          MR. MURPHY:  I am prepared to address it right now.

1    THE COURT:  Well, I think you should meet with your

2    client.

3    MR. MURPHY:  I met with her last night, Judge.  I

4    would have met with her a few minutes this morning, but she

5    brought the kids down.

6    THE COURT:  She is telling me that you haven't had

7    time to prepare.

8    MR. MURPHY:  Basically, I have never asked to

9    withdraw from a case in federal court.  I can recall offhand

10   once in state court.  And that's over 41 years.

11   Ms. Littrice -- Ms. El Bey and I are not

12   communicating at all.

13   I don't know how many times I have seen her since

14   the last court date, but I know I have talked to her

15   continually.  But admittedly, things have gone askew because

16   of things that I don't feel are appropriate for a defense,

17   especially by an attorney.  And I have actually taken time

18   and looked at them.

19   I mean, I can't be ready if I can't communicate or

20   get the cooperation with my client.

21   Admittedly, I got a little upset.  And I never get

22   upset with clients, but I have been very upset to the point

23   where I don't know how I can represent her when I don't know

24   what's going on.

25   She talked about the vacation schedule.  She may or

1    may not have told me.  I really don't know.

2           I have been on trial, but I am here.  I am

3    available.  The investigator has been out there six -- I

4    believe he told me six times.  But I just -- I am not having

5    communications.

6           I am not able to communicate with her -- for

7    example, this bill of particulars that I don't want my name

8    on is -- I don't know if anybody wants to see it, but I don't

9    believe it's appropriate.

10          I mean, she and I have deep-seated problems right

11   now, especially when it comes to some of the other attorneys

12   that were with me, some things that have been said, some

13   things I would certainly disagree with.

14          I have got a file.  It's fairly orderly.  The

15   government does have, I think, 41 boxes over at the IRS that

16   are in disarray.  Things may have been missed.  I certainly

17   would never believe for one second that Lela Johnson would

18   withhold anything I asked for.  Never for a second would I

19   think that.

20          That doesn't make me a coconspirator with the

21   government.  It's just that that's how I feel.

22          But I don't know if I can represent her.  I can't

23   sleep at night.  I couldn't sleep last night.  I mean,

24   there's things that have been said that aren't correct.

25          So my position is -- and I told her last night --

1    at this late juncture, that I was going to ask to withdraw.

2          She came about 5:30 or so last night, and we were

3    supposed to meet this morning, but she got -- she was

4    delayed.

5          One of the problems, too, is Mr. Manning, who was

6    the -- he is the tax attorney who went with her to go through

7    the boxes, I don't believe is any longer on the case.  So I

8    can't say what's in those boxes or not.

9          THE COURT:  My concern, Mr. Murphy, is, I don't

10   have any reason to believe some other lawyer will be better

11   equipped to handle this case or will be willing to adopt

12   positions that you have been unwilling to adopt.

13         I also think there is real unfairness to the

14   government in not proceeding on a trial date they have

15   prepared now for months for.  And in fact, they were ready

16   back months ago to try the case.  If we continue it, I don't

17   know to what end that is.

18         It doesn't sound as though Ms. Littrice expects to

19   work with another lawyer.  If she expects to represent

20   herself, I haven't heard that either.

21         MR. MURPHY:  She told me last night that she was

22   consulting with another lawyer.

23         THE COURT:  Is that lawyer available?

24         I can't reset the trial unless some lawyer is

25   telling me when it is he or she is going to be prepared to

1    proceed.

2          MR. MURPHY:  The lawyer was telling her what I am

3    doing wrong apparently.

4          THE DEFENDANT:  May I speak?

5          THE COURT:  Sure.

6          THE DEFENDANT:  I haven't been consulting another

7    attorney for my case.  I have been researching on my own.  So

8    any information I have given to Mr. Murphy has been

9    information that I researched on my own.  I haven't had

10   another lawyer.

11         I did introduce Mr. Murphy to someone who I thought

12   could be a good special witness or an expert witness on our

13   behalf, but I have not consulted with him after he met with

14   Mr. Murphy.  That was back before we came here in May.

15         And with respect to the private investigator, we

16   haven't seen him since before May as well.

17         THE COURT:  Do you have another lawyer who's going

18   to be representing you?

19         THE DEFENDANT:  No.

20         THE COURT:  In that case, I think that you should

21   be prepared to proceed *pro se* on the 17th of August.

22         THE DEFENDANT:  I was going to find another lawyer

23   that I could use, but the information that Mr. Manning has,

24   who he is referring to, Mr. Manning needs to be paid a

25   certain amount of money, and that's why he is not assisting.

1    But he also has a lot of the pertinent information that the

2    three of us have come up with putting the case together, up

3    until May.

4            THE COURT:  I am not sure I understand how that

5    responds to my direction.

6            THE DEFENDANT:  Mr. Manning only withdrew because

7    he needed to be paid money.  And I have already exhausted

8    thousands of thousands of dollars that we don't have anymore.

9            THE COURT:  Fair enough.

10           THE DEFENDANT:  So my position is, I would not want

11   to represent myself *pro se*.  I never said that, and I never

12   told Mr. Murphy that either.  But the trial date is -- and he

13   is not being accountable as an attorney and as an officer of

14   the court.

15           I hear what he is saying about Ms. Johnson.  I

16   don't know what his conversations were with Ms. Johnson.  I

17   don't know how many times she has talked to him.  But as a

18   client, I would never get before the Court and lie and say

19   that I have talked to Mr. Murphy and prepared for trial.

20           Mr. Murphy has had murder cases back to back to

21   back.  So from the date you extended the case, we never heard

22   from him.

23           THE COURT:  Mr. Murphy --

24           THE DEFENDANT:  That's a problem for me because

25   Mr. Murphy should be stepping up and being honest with the

1   Court.

2        THE COURT:  Mr. Murphy has never, in my experience,

3   been a person of anything other than complete honesty.  And I

4   have never seen -- I have never had a basis -- in years on

5   this bench, seeing this gentleman and many other lawyers, I

6   have never had a basis to question his integrity.  None.  I

7   have never had the slightest suspicion about that.

8        I just want to make that comment for the record.

9        Now, I still didn't understand the request.

10       We have a trial date set for the 17th.  If

11  Mr. Murphy will not be representing you, then we need another

12  lawyer to represent you or you will proceed on your own.

13       I have not --

14       THE DEFENDANT:  I am not prepared --

15       THE COURT:  Could I finish?

16       THE DEFENDANT:  Sure.

17       THE COURT:  I have not heard from you which of

18  those options you are asking for.

19       When you have mentioned a continuance, you haven't

20  even told me how much time you need.

21       THE DEFENDANT:  If I need to retain another lawyer,

22  an adequate two weeks should be sufficient.  I am not asking

23  for an extension beyond recognition.

24       If Mr. Murphy doesn't want to represent me, I am

25  not asking him not to.  He is electing to do that.  So I am

1    not trying to buy more time on that.

2           But also with respect to your experience with him,

3    I also have an experience with him that dates back to June of

4    2005.  And we had no reason to be very attentive because no

5    information was being provided for three years.  And then,

6    out of the blue, information came from everywhere.  And then

7    I needed to be in his face on a regular basis.

8           And to me, this is an important matter that I could

9    not let go for months without speaking to my attorney.

10          If you ask Mr. Murphy of his schedule and how many

11   times he has met -- the Court has not asked Mr. Murphy how

12   many times he has met with me since you extended the case on

13   May 10th.  We have only met one time.  That's not sufficient

14   for an adequate defense.

15          And as an officer of the court, he has a duty to

16   defend me.  And I could very well say, I don't want to get

17   another lawyer.  I don't even have any money to pay another

18   lawyer.

19          THE COURT:  I am going to grant Mr. Murphy's oral

20   motion for leave to withdraw.

21          I am going to set this case for a status on Monday

22   morning.  At that time, Ms. Littrice, I expect that you will

23   appear here and explain to me that -- identify to me a lawyer

24   who will be representing you in this case or, alternatively,

25   letting me know that you will be proceeding *pro se* or whether

1   you are asking that the Court appoint counsel.

2           I will see you on Monday.

3           THE DEFENDANT:  Your Honor, can we take into

4   consideration that somebody paid for my family to go on a

5   vacation and we gave this information to Bill back in May?

6           THE COURT:  Ms. Littrice, I am sorry.  I have not

7   yet authorized you to leave on that vacation.

8           THE DEFENDANT:  But that's what -- he was supposed

9   to be asking for me, but he never came before you.  That's

10  why --

11          THE COURT:  I will see you on Monday morning at

12  9 o'clock for a status in this case.

13          THE DEFENDANT:  But on Monday, that would be after

14  the date which I was supposed to leave.

15          THE COURT:  9 o'clock Monday morning.  I will see

16  you then.

17          And I will expect at that time that you will

18  identify the lawyer who will be representing you or you will

19  explain your intentions --

20          THE DEFENDANT:  With respect to --

21          THE COURT:  Could I finish?

22          THE DEFENDANT:  Sure.

23          THE COURT:  -- or you will explain your intentions

24  to proceed *pro se*.

25          MR. MURPHY:  Could you do it Friday morning?

1          THE COURT:  With respect --

2          MR. MURPHY:  I am sorry.

3          THE COURT:  -- I have yet to see a motion for leave

4    to allow this lady to leave this jurisdiction.  I was

5    reluctant to do that the last time such a motion was made.

6          She has had, in my memory, at least one vacation

7    since this indictment was pending.

8          MS. JOHNSON:  One this year and one last year.

9          THE COURT:  That's more than many lawyers have had.

10         I am not inclined to allow leave for yet another

11   vacation, particularly when we are days from the trial date.

12         I will see you on Monday at 9 o'clock.

13         MS. JOHNSON:  Your Honor, I apologize, but I need

14   to ask, with regard to my witnesses, what is the status of

15   the trial date?

16         THE COURT:  I will make a firm decision on that on

17   Monday as well.

18         MS. JOHNSON:  Thank you, your Honor.

19         THE DEFENDANT:  Your Honor, may I ask a question?

20         If I am to find a lawyer by Monday and Mr. Murphy

21   has come off of the case and I have to give you a definite

22   answer, how am I going to do that with, one, I have already

23   paid Mr. Murphy the funds that I have paid for my defense.

24         And also with, number two, all of my documents are

25   in his possession and Mr. Manning's, so that's not even

1  leaving me enough time to do so such.  No lawyer is going to

2  want to take my case at this short time without having the

3  documents on hand or at least some sort of privy to the

4  information that's been presented here.

5              MR. MURPHY:  Can I clear that up, Judge?

6              I haven't received any money in -- I can't tell you

7  in how long.  I didn't do it on -- I didn't charge her on

8  purpose.  But I do have an organized file in my office.

9              THE COURT:  I was just going to comment.  I am sure

10  Mr. Murphy can provide all the documents to any lawyer who

11  will be stepping in immediately.

12              THE DEFENDANT:  Is there some forum set for me as a

13  defendant where I could challenge my attorney that's stepping

14  off of the case two weeks before the trial?

15              THE COURT:  No.  You have had that opportunity this

16  afternoon.  You have had that opportunity for --

17              THE DEFENDANT:  But he came up and said what he

18  wanted to say.  So that was allowed to the Court.  And he

19  wasn't being honest with you.

20              THE COURT:  Ms. El Bey, you have been speaking for

21  more than an hour.  You have had adequate opportunity to

22  explain your position here.  I don't think -- I think there

23  has been an adequate forum in that regard here in this

24  courtroom this afternoon.

25              I will see you at 9:00 on Monday.

1      (An adjournment was taken at 1:13 p.m.)

2                    *    *    *    *    *

3      I certify that the foregoing is a correct transcript from the
       record of proceedings in the above-entitled matter.
4

5      /s/ Frances Ward                        August 7, 2009.
       Official Court Reporter
6      F

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25